1  E. MARTIN ESTRADA
   United States Attorney
2  MACK E. JENKINS
   Assistant United States Attorney
3  Chief, Criminal Division
   CORY L. BURLESON (Cal. Bar No. 322239)
4  Assistant United States Attorney
   Riverside Branch Office
5     3403 Tenth Street, Suite 200
      Riverside, California 92501
6     Telephone: (951) 276-6945
      Facsimile: (951) 276-6202
7     Email:    Cory.Burleson@usdoj.gov

8  GLENN S. LEON
   Chief, Fraud Section
9  LAUREN ARCHER
   Trial Attorney, Fraud Section
10 U.S. Department of Justice, Criminal Division

11 Attorneys for Plaintiff
   UNITED STATES OF AMERICA

12                   UNITED STATES DISTRICT COURT

13              FOR THE CENTRAL DISTRICT OF CALIFORNIA

14 UNITED STATES OF AMERICA,              ED CR No. 22-274-AB

15          Plaintiff,                    UNITED STATES' RESPONSE TO
                                          PRESENTENCE REPORT AND SENTENCING
16               v.                       POSITION FOR DEFENDANT SHARIEF
                                          DEONA MCDOWELL
17 SHARIEF DEONA MCDOWELL,
                                          [EXHIBITS 1-13 FILED CONCURRENTLY
18          Defendant.                    HEREWITH]

19                                        Hearing Date: June 30, 2023
20                                        Hearing Time: 1:30 p.m.
                                          Location:    Courtroom of Hon.
21                                                      André Birotte, Jr.

22

23      Plaintiff United States of America, by and through its counsel

24 of record, the United States Attorney for the Central District of

25 California, Assistant United States Attorney Cory L. Burleson, and

26 Department of Justice Trial Attorney Lauren Archer, hereby files its

27 response to the presentence report and its sentencing position for

28 defendant Sharief Deona McDowell.

1    This sentencing position is based on the attached memorandum of

2  points and authorities and Exhibits 1-13; the files and records in

3  this case, including the United States Probation and Pretrial

4  Services Office's Presentence Investigation Report and Recommendation

5  Letter; and such further evidence and argument as the Court may

6  permit.

7    Exhibits 6-13 are victim impact statements and are redacted to

8  protect their privacy.

9    The United States respectfully requests the opportunity to

10 supplement its position or respond to defendant or the Probation

11 Office as may become necessary.

12 Dated: June 14, 2023              Respectfully submitted,

13                                   E. MARTIN ESTRADA
                                     United States Attorney
14
                                     MACK E. JENKINS
15                                   Assistant United States Attorney
                                     Chief, Criminal Division
16
                                     _____/s/_____
17                                   CORY L. BURLESON
                                     Assistant United States Attorney
18                                   Riverside Branch Office

19                                   GLENN S. LEON
                                     Chief, Fraud Section
20                                   U.S. Department of Justice
                                     Criminal Division
21
                                     _____/s/_____
22                                   LAUREN ARCHER
                                     Trial Attorney, Fraud Section
23
                                     Attorneys for Plaintiff
24                                   UNITED STATES OF AMERICA

25

26

27

28

                                     2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

From at least October 2018 through at least March 2022, Defendant Sharief Deona McDowell defrauded at least 28 investors of approximately $2.6 million by falsely representing that she would invest their money in commodity futures and options contracts.  In reality, defendant did not trade with the investors' money and instead stole the funds for her personal use.

On December 13, 2022, pursuant to the Plea Agreement in this case (Dkt. 7), defendant pleaded guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343.  (Dkt. 26.)  On January 30, 2023, the United States Pretrial Services and Probation Office ("Probation") issued its Presentence Report (Dkt. 28, "PSR") and Recommendation Letter (Dkt. 27, "RL").  The PSR calculated a total Guidelines offense level of 26 and a Criminal History Category of III, based on five criminal history points, resulting in a Guidelines range of 78-97 months' imprisonment.  (RL at 2.)

The United States has no legal or factual objections to the PSR's calculation of defendant's criminal history.  However, the United States, consistent with the terms of the Plea Agreement, objects to Probation's application of U.S.S.G. § 2B1.1(b)(2)(B) and, therefore, believes the appropriate total Guidelines offense level is 24.  The United States asks the Court to apply a total offense level of 24, which results in a Guidelines range of 63-78 months.

The United States respectfully requests that the Court impose the following sentence: (1) 63 months' imprisonment, which is the low-end of the calculated Guidelines range; (2) three years of supervised release; (3) a $100 mandatory special assessment; (4) that

defendant be ordered to pay $2,446,093.96 in restitution to the victims of the offense; and (5) that all fines be waived.

Sixty-three months' imprisonment is just punishment because it reflects the seriousness of defendant's fraudulent conduct through which she personally benefitted millions of dollars while causing significant losses to individual investors. Furthermore, a custodial sentence at the low-end of the Guidelines range--and nothing less--is necessary to adequately deter defendant, who committed the instant offense in violation of a court order prohibiting her from engaging in this conduct.

## II. STATEMENT OF FACTS

### A. Facts Defendant Admitted at Her Change of Plea Hearing

At her December 13, 2022 change of plea hearing, defendant admitted that she knowingly, and with intent to defraud, devised, participated in, and executed a scheme to defraud investors and to obtain investors' money by means of materially false and fraudulent pretenses, representations, and promises. (PSR ¶ 12.)

As part of the fraudulent scheme, defendant started a purported investment company, Presidential Investments Inc LLC ("Presidential Investments") and knowingly solicited money from victims by falsely representing that she would use investors' money to purchase commodity futures and options contracts on their behalf. (PSR ¶ 14.) In fact, defendant misappropriated investors' money and used it to pay for personal expenses, to purchase gifts for third parties, and to make payments to other investors, which defendant falsely represented as disbursements from the recipients' own investment accounts. (PSR ¶ 14.)

To execute the scheme, defendant fabricated trade confirmations

and account statements, which she sent to investors via interstate wire communications, namely emails, to deceive the investors into thinking that she executed trades on their behalf and that their investments were generating returns.  (PSR ¶ 15.)  Defendant admitted that she intentionally defrauded at least 28 investors of approximately $2,678,768.96.  (PSR ¶ 18.)

Defendant committed the instant fraud in violation of a prior judicial order.  (PSR ¶ 19.)  Before establishing her own investment firm, defendant worked as a salesperson at the 20/20 Trading Company, which traded in precious metals.  In 2011, the Commodities Futures Trading Commission ("CFTC") filed a civil action against 20/20 Trading Company, defendant, and others, in the Central District of California, which resulted in defendant's consent to a $10,000 monetary penalty and a permanent injunction.  (See Ex. 1.)  The permanent injunction prohibited defendant from "directly or indirectly" engaging in conduct, "including, but not limited to, cheating, defrauding, or attempting to cheat or defraud, or deceiving or attempting to deceive any other person in connection with an offer to enter into, the entry into, the confirmation of the execution of, or the maintenance of, any commodity option transaction."  (Id. ¶ 15.)

B.   Additional Facts

Over the course of more than three years, defendant made dozens of material misrepresentations and false statements for the purpose of executing the fraud scheme in this case.  (See, e.g., Exs. 6-10.) Defendant sent near-daily text messages to investors with information about trades she claimed to be making on their behalf.  (Ex. 6 at 1; Ex. 7 at 1; Ex. 10 at 1.)  Defendant even sent investors doctored

3

screenshots from Dillon Gage, the company she purportedly used to invest their money in gold and silver.  (See Ex. 3 at 2.)

Defendant went to great lengths to prolong her scheme. Defendant used money provided by new investors to repay earlier investors--a tactic often used to conceal and prolong Ponzi and other investment fraud schemes.  Defendant made false statements to investors who sought to withdraw money from their accounts, and she offered false explanations for payout delays.  (Ex. 3 at 2; Ex. 4 at 2.)  Defendant also attempted to avoid payouts by advising investors to roll their "gains" into new investments by buying more options or purchasing gold and silver.  (Ex. 4 at 2; Ex. 5 at 2.)

**III. THE PRESENTENCE INVESTIGATION REPORT**

On January 30, 2023, Probation issued its RL and disclosed the PSR to the parties.  (Dkts. 27, 28.)

**A.   Offense Level**

In the PSR, Probation concluded that the appropriate total offense level is 26.  Probation's offense level calculation is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 7 | [U.S.S.G. § 2B1.1(a)(1)] |
| Loss Amount between $1.5M and $3.5M: | +16 | [U.S.S.G. § 2B1.1(b)(1)(I)] |
| Substantial Financial Hardship to 5 Victims: | +4 | [U.S.S.G. § 2B1.1(b)(2)(B)] |
| Violation of Prior Injunction: | +2 | [U.S.S.G. § 2B1.1(b)(9)] |
| Acceptance of Responsibility: | -3 | [U.S.S.G. §§ 3E1.1(a), (b)] |
| _____ | | |
| TOTAL: | 26 | |

(PSR ¶¶ 32-51.)

**B.   Criminal History Category**

In the PSR, Probation concluded that defendant has accumulated five criminal history points.  (PSR ¶ 62.)  Defendant has prior

4

criminal convictions and multiple revocations, resulting in three criminal history points.  (PSR ¶ 60.)  In addition, defendant committed the instant offense while on probation, before it expired on November 10, 2021; therefore, two points are added to her criminal history score under U.S.S.G. § 4A1.1(d).  (PSR ¶ 61.)  Accordingly, defendant is in Criminal History Category III.  (PSR ¶ 62.)

### C.   Probation's Recommended Sentence

The Guidelines range for a total offense level of 26 with Criminal History Category III is 78 to 97 months.  (PSR ¶ 109.)

In its RL, Probation recommends the following sentence: (1) 78 months' imprisonment, which is the low end of Probation's calculated Guidelines range; (2) two years of supervised release; (3) a $100 mandatory special assessment; and (4) that all fines be waived.  (RL at 1-2.)

### D.   The United States' Position on the PSR and RL

The United States concurs with the Criminal History Category computation set forth in the PSR.  The United States objects to Probation's offense level calculation and its total offense level.

Specifically, the United States objects to the application of a 4-level upward adjustment under U.S.S.G. § 2B1.1(b)(2)(B), as it differs from the parties' agreement in the Plea Agreement.  In the Plea Agreement, the parties agreed that the 2-level upward adjustment under U.S.S.G. § 2B1.1(b)(2)(A) applied because defendant's conduct involved more than 10 victims.  (Plea Agreement ¶ 12.)  To provide defendant with the benefit of her bargain, the United States stands by its stipulation in the Plea Agreement and asks the Court to apply the 2-level upward adjustment under U.S.S.G. § 2B1.1(b)(2)(A), not the 4-level upward adjustment recommended by Probation.  Thus, the

United States believes the appropriate total offense level is 24, which, with a Criminal History Category of III, results in a Guidelines range of 63-78 months.

As set forth in the following section, the United States believes that a custodial sentence at the low-end of the Guidelines range is appropriate (but with the low-end at 63 months), and that three years (rather than two years) of supervised release is warranted.

**IV.  THE UNITED STATES' RECOMMENDED SENTENCE AND § 3553(a) ANALYSIS**

    **A.  Sixty-Three Months' Imprisonment Is Just Punishment**

The United States recommends the following sentence: (1) 63 months' imprisonment, which is the low-end of the calculated Guidelines range; (2) three years of supervised release; (3) a $100 mandatory special assessment; (4) that defendant be ordered to pay $2,446,093.96 in restitution to the victims of the offense; and (5) that all fines be waived.[1]

A 63-month custodial sentence is appropriate in light of the nature and seriousness of the offense and the history and characteristics of defendant. Such a sentence would be "sufficient,

---

[1] The discussion in this brief of how the § 3553(a) factors apply in this case is meant to support the United States' request for a sentence of 63 months' imprisonment, along with the other components of the sentence to be imposed. Nothing in this sentencing position should be construed as recommending or suggesting that a custodial sentence of more than 63 months is appropriate under the § 3553(a) factors. The United States anticipates that defendant will seek a variance below the Guidelines range because of defendant's history and characteristics, among other things. While there is mitigation present in defendant's history and characteristics, that mitigation has already been carefully incorporated into the United States' recommended sentence. Aggravating information discussed is intended only to highlight the appropriateness of the recommended 63-month sentence (along with the other components of the sentence to be imposed), and in so doing make clear that a lesser custodial sentence would not be appropriate in this case.

but not greater than necessary," to comply with the purposes
enumerated in 18 U.S.C. § 3553(a)(2).

**B.   Nature, Circumstances, and Seriousness of the Offense**

A 63-month sentence, at the low-end of the Guidelines range,
necessarily reflects the nature, circumstances, and seriousness of
the defendant's conduct.

First, defendant's conduct shows a brazen disregard for the law.
From the very formation of her company, Presidential Investments,
defendant intended to use it to commit fraud, after having been
prohibited by a court order from doing precisely that.  Aware of the
injunction, defendant took steps to conceal her conduct by
registering the business and opening bank accounts in the names of
other people.  (PSR ¶ 13.)  The fact that defendant went through such
steps shows the effort she was willing to go through to conceal her
conduct and skirt the law.  It also shows defendant never intended to
operate a legitimate business.  As further evidence of her intent,
for the entire period that she operated Presidential Investments,
defendant never engaged in any trading or other legitimate income-
generating activities.  Defendant misappropriated every investment
that she received.

Second, defendant's conduct shows a brazen disregard for the
harm she caused to the community.  For more than three years,
defendant lied and stole at the expense of innocent investors.
Defendant recruited most of her victims through referrals.  Although
most victims never met her in person, defendant communicated with
them directly through text messages and emails.  Defendant told them
she would invest their money, but instead, defendant stole the money.
She purchased cars, trips, and gifts for herself and others, and

generally, lived off victims' savings.  Defendant's scheme had a significant financial impact on many of her victims, some who trusted her with hundreds of thousands of dollars that they had saved for their retirement.

### C.    Defendant's History and Characteristics

In March 2022, defendant, through counsel, reported her crimes to the Federal Bureau of Investigation and CFTC.  To be sure, defendant's confession substantially assisted in the investigation of this case.  However, defendant's confession must be weighed against the fact that she is a recidivist, who knowingly committed the instant offense in direct violation of a prior judicial order.  (See Ex. 1.)

Defendant reported to Probation that her usual occupation is a broker/analyst.  (PSR ¶ 103.)  At one time, defendant was a licensed broker.  (See Ex. 2.)  However, at all times relevant to the charged misconduct, defendant was not a licensed broker, investment advisor, or otherwise registered with the CFTC or NFA.  (Id.)  Defendant must be admonished, again, to cease from representing herself as a broker, or from representing to the public, in any way, that she is permitted to participate in trading activities, directly or indirectly, on behalf of others.

The recommended sentence of 63 months' imprisonment, at the low end of the Guidelines range, is necessary to adequately deter defendant and put an end to her criminal activity.  A significant custodial sentence will also provide general deterrence and protect the public from future crimes by this defendant and others who would otherwise consider engaging in similar conduct.

**V.   RESTITUTION**

The United States agrees with Probation's assessment that restitution is mandatory in this case under 18 U.S.C. § 3363A, and respectfully requests that the Court order defendant to pay restitution to the victims in the amount of $2,446,093.96.[2]  (PSR ¶ 119; RL at 1.)

**VI.   THREE YEARS OF SUPERVISED RELEASE IS WARRANTED**

The United States believes that a 3-year term of supervised release is supported by the facts of this case and defendant's history and characteristics.  Given the seriousness of the instant offense, defendant's criminal history, defendant's previous probation violations, and the other considerations stated above, a 3-year period of supervised release is necessary to provide defendant with oversight and supervision after her release from prison.  See United States v. Johnson, 529 U.S. 53, 59 (2000) ("Congress intended supervised release to assist individuals in their transition to community life."); S. Rep. No. 98-225, at 124 (1983) (describing the "primary goal" of supervised release as providing "rehabilitation").  Defendant's probation violations and the fact that she committed the instant offense in violation of a prior court order show that recidivism is a real concern.  Three years of supervised release is warranted.

Moreover, in addition to the supervised release terms and conditions proposed by Probation (RL at 2-3), the United States requests that defendant be prohibited from conducting any investing

---

[2] The intended loss is less than the actual loss for purposes of calculating restitution because defendant returned approximately $200,000 to some investors using money received from other investors.

9

or trading on behalf of others during the period of supervised release.  As noted above, and as defendant admitted to Probation, defendant is banned from trading with futures and options.  (Ex. 1 ¶ 15; PSR ¶ 29.)  According to the letter defendant wrote to Probation, however, defendant does not believe she is banned from stocks or foreign exchanges, and thus, defendant plans to use a portion of her future income to trade stocks and foreign exchanges to generate funds to pay restitution.  (PSR ¶ 29.)  Given defendant's conduct in this case, prohibiting defendant from trading on behalf of others while on supervised release will hopefully prevent defendant from committing this conduct in the future, and it will give Probation the opportunity to monitor defendant's investment and trading activity.

**VII. CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court sentence defendant to a 63-month term of imprisonment followed by three years of supervised release, and that the Court order defendant to pay $2,446,093.96 in restitution to the victims of the offense.